We have six cases on our docket this morning. Five set for oral argument. We'll take a break at some point, probably after the third or fourth case, but we'll see. We'll start with 23-7084, U.S. v. Maytubby. Mr. Lee. Good morning, your honors. I'm Josh Lee from the Colorado Federal Public Defender's Office, and I represent Lance Maytubby. Mr. Maytubby's of improper inducement and should have been suppressed. When Officer White started the interrogation, Mr. Maytubby was resolved to maintain his innocence. He repeatedly denied the accusations and resisted several strategies that Officer White employed to try to reverse those denials. But Officer White ultimately succeeded in overcoming Mr. Maytubby's resolve by offering a quid pro quo. If Mr. Maytubby confessed, Officer White would go to the prosecutor and advocate an extraordinarily favorable mitigation narrative that minimized Mr. Maytubby's culpability. And maybe Mr. Maytubby could just get into some counseling and move on with life. What was so extraordinary? I thought he just said that his report would say he was a stand-up guy and he took responsibility. No, there were a lot of very specific things, so let me go through them. He said, I'm going to tell the prosecutor that you're a working man, a family man, and a pastor. Everybody that we've spoken to says you're a good and honest man with a good heart, that I believe fundamentally you're a good person, that you just made a mistake and acted out of character, that this happened four years ago, it hadn't happened since. And, you know, stuff like this happens. It doesn't mean you're the type of guy who does these things. It doesn't mean you're any kind of predator. So what's the extraordinary part? The extraordinary part is that it is a comprehensive mitigation narrative presented from the assistant chief of police, who has an in with the prosecutor. And this court has never sanctioned anything like that before. The defendant doesn't know that. They have to introduce themselves at the start of the interview. They don't know each other. He's in his street clothes, as I understand it. No, he wasn't in his street clothes. He wasn't in his uniform. He wasn't. So it didn't play into my briefing, but he testifies explicitly he's in his uniform. The district court finds he wasn't in his uniform. That's clearly incorrect. But to the extent it becomes important to the court, that's clearly wrong. But what is that? Are you suggesting that that's some kind of implied promise of leniency? Because he's basically saying, I'm going to tell the prosecutor you're a good guy. I think it was a lot more than that. It was a comprehensive. I just heard what you just read. And I want to know, how does that fit into the cases? Because the cases on promises of leniency where we've said, yeah, you've gone too far, are very specific in terms of saying, well, you're going to get this many years instead of this many years. You know, it's a specific statement about what will happen if he confesses. And I don't see anything like that. It fits into the case law in two ways. First, the cases have explicitly said that an inducement of any sort can render a confession involuntary. There's no case from this court that I've been able to find that the government has cited that it has to take the specific form of explicit promise of leniency. And in fact, there's two cases, one from this court and one from the Supreme Court, that treat inducements other than guarantees about a sentencing outcome as productive of an involuntary confession. That's the Griffin case, which I cited, where the court treated a promise to protect the inmate's health and safety as an improper inducement. And the Haynes case from the Supreme Court, where the Supreme Court treated a promise of access to family as an improper inducement. So we have the general principle of law that any inducement goes to produce a confession, an involuntary confession. And we have the case law that says misrepresentations. What was that? What if he would have said, this case has all the earmarks of one that will go federal. And you have all the earmarks of a guy who's going to cap out at the high level of 43. But if you accept responsibility, you get three levels off, and that's going to make the difference of 80 months in your sentence on the low end. Would you say that's an inducement, even though it's all true? No, that's the Perez case in my view. There is a difference between providing accurate information about federal sentencing and promising to take direct action on the defendant's behalf and saying things that are misleading. What is misleading about saying, here's our evidence, and if you're going to acknowledge that this is so, I'm going to go tell the prosecutor about that, no big shock there, and that you're a hard worker, stand-up guy, whatever else? That's the promise of direct action. The misleading aspect is when Officer White says, well, Mr. Maytubey says, how is this going to make a difference if you go to the prosecutor and do this? And Officer White says, ah, it'll make a big difference because you can, quote, get past this, get into some counseling, and move on with life. Well, he didn't say that. He said everyone. He talked about everyone. He mentioned the girl, the two young victims. He said everyone needs to get past this. I'm glad you mentioned this. That's important. Yes, I actually think it's important. Everyone needs to get some counseling. Everyone needs to move on. Right, including Mr. Maytubey. Here's why that supports my argument. Officer White's emotional healing framing doesn't mean he wasn't actually talking about consequences. That was the vehicle that he used to deliver a message about consequences. What he would have been understood to be saying is this. We don't have to go the punitive route. This sort of rehabilitation and reconciliation is an alternative way forward to the punitive. Alternative to prison? What's that? He was saying that's an alternative to prison? He was saying, or that's how he would have been understood, that it's an alternative to prison. Well, I think that's a reasonable interpretation. I think that's how Mr. Maytubey would have understood it. Yes. And it's in the context of Officer White saying, I'm going to go to the prosecutor and say, you're not a predator. You're not a future danger to anybody. And moreover, this specific mistake that you made four years ago, that can be healed. If that were so, if Mr. Maytubey had understood it that way, he would have said, you got a deal. Where do I sign? And yet we continue to go along with his denials. This is another critical point that I'm glad you brought up. That is what happened. Because what Officer White had not done until the very end of the interrogation. So he talks about all these things he wants to do for Mr. Maytubey, but he doesn't make it clear that it's contingent on a confession. Then at the end of the interview, he says, look, I can't do these things for you unless you're honest with me. And by honest, he's already rejected his denial. So by honest, he means confess. Well, you said, you originally said that when the counseling idea was brought up, that was a promise that he'd get counseling. And that's how Mr. Maytubey understood it. Which I say, why didn't Mr. Maytubey just accept the deal? And if that was his understanding, let me let me finish. I know you're eager, but five minutes elapsed. And then it's a so you're saying I can go and the officer says, yes, you can go. And that's when Mr. Maytubey says, I did it essentially. And in other words, what he was concerned about is if I admit it, I'm going to get arrested. And when he found out that wasn't so, he gave it up, said, I need to talk to my wife, so forth. So the the counseling thing is an inducement. I think that's got a temporal problem. And I'm sorry to interrupt you. Right. I'm too eager. So the problem is that he officer White only made clear that this was a quid pro quo at the end. When he's talking about counseling, he doesn't make it clear that this is only going to happen if you confess. He makes it clear that this is only going to happen if you confess. And Mr. Maytubey confesses within 30 seconds. That is, to me, compelling proof that the quid pro quo overcame his will. What about the acceptance of responsibility piece? I mean, what the officer said was true. If you admit it, you get less time. If that had been all he had said, that would qualify as a limited assurance under cases like Lewis and the recent Perez case. The promise is all of the specifics that he promised made it more concrete and credible and less like empty platitude. That's why we allow these limited assurances. They're not very persuasive. How about all of the other Lopez factors the district court went through painstakingly? Those all bear on what you're saying, too. Was the person intimidated? What was the setting? How long was the interview? Was the person free to go and understand that? That all weighs in on this business about promises of leniency and so forth, too, doesn't it? Yes, my response to that is this court's decisions in Lopez and Young. The way I read those is if you have a compelling inducement combined with the defendant being misled, that those two factors alone can produce an involuntary confession. You don't need other indicia of coercion and you don't need the defendant being particularly susceptible to coercion. My problem is with the last minute because at the very end of this interrogation, the officer says what his plan is. The ambiguity is removed at this point. He says essentially, I think this is probably the only reasonable way to read it, but you can dispute it, that, look, you did something four years ago. You haven't done anything since then. It was out of character. He may end up, and I'll go tell the DA that. And then his last sentence was, so he may end up, this is how it is. The guy acted out of character. Then the defendant says, well, then I can go home right now then. And the officer replies, okay. And then he confesses. That seems to be, it just sums up that all he was saying is I'll tell the DA. He's not intimidating him with confinement and things like that. He's told he can go home and then he decides to confess. That doesn't sound like coercion to me. It's the type of coercion that this court found in Young and Lopez. He was very friendly to him. He wanted to convince him, I'm the type of guy who's going to go to bat for you. I'm telling the DA exactly what happened, not saying anything false to the DA, but he needs him to confess before he can tell the DA that you confess. And then he says, yeah, you can go home. And then he confesses. What he was promising to was not what he'd been reported to by the kids. He was promising to minimize this to the DA. By how? By saying it was out of character. He'd been clean for four years. Yes. Which is true. I mean, we have no idea whether that's true. Officer White has no idea whether that's true. That's something that Mr. Maytabi confessing does not imply that Officer White knows that it's never been repeated for four years. It was totally out of character. The lie was, I'll tell them you didn't do anything because I don't know of anything you did, but you haven't provided compelling evidence that you didn't do anything. That's the lie. The extraordinary inducement was he was promising to advocate this mitigation narrative that he really didn't have any basis for. And the false statement is the statement about counseling, what the mitigation narrative can accomplish. He's summing up here. He says, this is what my plan was, and he sums it up. Doesn't mention I'm going to promise you that you can go do counseling instead of incarceration. There's nothing about that in the sum up. This is what my plan was. Doesn't that remove the ambiguity? No, because Mr. Maytabi has already asked what the result of your plan is going to be, and he says, get past this, get into counseling, and move on with life. So the fact that he says this at the end doesn't remove what he said before, he's referring back to what he said before. He's the one who says that he's going to get arrested. He knows he's going to get arrested. Sure. And the most common outcome in the is arrest, booked, released. I don't see how you can compare this case to Young or Lopez. Young, you have the agent saying, I know the judge, I can basically manipulate your sentence. Every true statement you tell us is going to bring your sentence down some. And in Lopez, unless you confess, you're going to drag your mom in here and prove she's a liar and so forth. We don't have anything even like that in this case. I think it is like those cases for the two reasons that I mentioned. There's an extraordinary inducement of, and there's an extraordinary inducement that is so far beyond just saying, I'll go tell the prosecutor that you cooperated. So that's the extraordinary inducement is to tell this totally comprehensive mitigation narrative. So that's, both cases have extraordinary inducements. And then we have the suspect is misled. He's misled about the consequences of what that intervention can be, that the leniency can be you get past this, get into counseling and move on with life. So that's why I think it's parallel to Lopez and Young. Thank you. Ms. Williams. Good morning, your honors. Lisa Williams, representing the United States of America. I think that I would like to start with this concept of any inducement can lead to an indirect confession, because that's simply not the law. Induce, I looked up the definition in the dictionary in preparation of the argument. Succeed in persuading or influencing someone to do something. Black's law defines it as the act or process of enticing or persuading another person to take a certain course of action. Your honors, you can induce me to talk about a certain topic related to this brief by asking a question. And so inducing by itself is not what the law is concerned about. The law is concerned about improper inducements. And so simply because Mr. Maytelby may have been induced by a mitigation report does not lead to the conclusion that his confession, if we're going to call it a confession, was involuntary. What the defense has to establish is some sort of improper inducement. Coercive? Is that what you're saying? Or where is the line? Well, there does have to be coercive conduct in order for the confession to be involuntary. That was the Young case. And Young said, so if there's no coercion, then you cannot find involuntariness. And the improper inducement would lead to the conclusion that there is coercive conduct. But then you still have to look at the 3501 factors and the Lopez factors and take in the totality of the circumstances. The case is cited by the defense to argue that any inducement can be coercive. Do not say that. First, the Hayes case from the Supreme Court is a 1963 case about a robbery that took place in Spokane, Washington. The defendant in Hayes was held, I believe, for four total days. But he was not arraigned. He was not provided his right to counsel, his right not to speak. There was a whole host of coercive activity that took place. And along with that is they said, well, we'll let you call your wife if you just sign this confession. And in Hayes, he had confessed orally, but he didn't want to sign the written confession because in 1963, we didn't have videotapes and recordings. And so the written confession was really what the police wanted him to do. And so that call your wife is a tiny, tiny part of what the Supreme Court had serious issue with in Hayes. Griffith, the other case cited, is equally not just as simple as the defense say, because when you look at what the defense cites in their reply brief, it seems like it's a case just about inducement. But they left off the first sentence of that quote, which says, where a promise of leniency has been made in exchange for a statement, an inculpatory statement would be the product of inducement and thus not an act of free will. And so Griffith is a promise of leniency as the inducement. It's not a freestanding inducement. And so this circuit or the Supreme Court has never just acknowledged this vague concept that any inducement can lead to coercion. It has to be an improper inducement. So what if the officer asked something that are induced in a way that he knew was really unlikely? Had the officer said, we've had a lot of sex offenders in here and I've got 20 years in the department, as he said, and most of the time the judge just says, get some counseling and we cut you loose. You'll probably be arrested and you'll have to go through a couple of inconvenient court hearings. But what we really want is for you to start feeling better about yourself and so forth and so on. That would be improper. So I think that gets, yes, Your Honor, I think it's much closer to improper because that's what I was going to say next is when this circuit is found improper inducement, it's been a promise of leniency combined with a misstatement of law or fact. Reading the cases, that's what I could deduce as the equation for improper inducement is you have to have this promise of leniency. In this case, we'll get you counseling. That's also not true, right? And so as the panel noted in questioning counsel, nothing Officer White said to Mr. Maytubby was a lie. Well, let me go back to my question, which was, can the officer do that and it's not an improper inducement? You said that's closer or something, but you're still not saying that would be improper inducement? Well, I think, again, I think I could agree that it's improper inducement where I would not agree that it's necessarily coercive so that the confession is involuntary because I think the court would have to look at the remaining Lopez factors and the totality of the circumstances. The case law has been clear that not one single factor is ever determinative in deciding whether or not a confession is involuntary. If we look at the recording, we listen to the words and we say, Mr. Maytubby may well have understood that that's what was being dangled to him. Is that a reversal? No. Even if, if you came in and said he understood that, would that be a reversal? No. Okay. So in this case, there's not a promise of leniency and there's not a misrepresentation. You're not going to say why you say no? Yeah. I'm interested also. I've learned to only answer the question asked. That was a yes or no question. Now there's a new question. No, because again, with all things, like let's take a step back and really look at this. Your Honor, I saw a little look on your face when you called it an interrogation because it's really hard to call this an interrogation. He's in the break room of the police station where the victim's grandma was interviewed the day before. He's free to go. He came down voluntarily. He's advised of his rights. Officer White is described as the nicest, perhaps the nicest police officer ever. And so, and Mr. Maytubby is of average intelligence. He understands what's going on. He understands the charges against him. He's not susceptible to, you know, not getting what's going on. And part of not getting, part of that average intelligence is knowing he's being accused of sexually abusing children. And it doesn't take a rocket scientist to figure out that you can't do that under any circumstance, right? This is not a crime that's hard to understand. And so even if Officer White had made a misrepresentation or you can get counseling instead, I mean, it's just so far beyond the pale for that to be a reasonable interpretation. And then you combine it with the fact that I think it's important what Mr. Maytubby said at the end, please don't arrest me at my work. He understands the gravity of what's going on. He understands what he just confessed to. And he didn't confess to it because of some, you know, unreasonable inference that he really thought he was going to get away with counseling instead of being arrested because he knows he's getting arrested. And he says, please don't do it at my work. So I think, again, not one single factor is determinative in this interview, but with all, and let's not forget it's 26 minutes long. I mean, this is not a four day long interrogation. It's not a four hour long interrogation. It is less than a half an hour. And it's a conversation that is civil and polite and friendly. And I also do think that what the court hit on, the timing of the confession is key because Mr. Maytubby says, all right, well, then I want to go. And Officer White says, okay. And then he says, well, I'm going to say, yes, I did it. I mean, Officer White didn't say, are you sure you want to go? Can you just stay a little bit longer? Oh, well, if you leave now, I'm going to really have to write that into the report. He said, okay. He said, go ahead. And then Mr. Maytubby decides knowingly and voluntarily to say, okay, yes, I'm going to say I did it. And so with all those factors, even if there was some slight misrepresentation with everything else that's going on, I don't think that there would be sufficient facts to find that that confession was involuntary and should have been suppressed. I also want to take up the issue with the counseling because this is not a promise of counseling in lieu of prison. And I'm not going to read. Government tried to transcribe as much as the interview quickly. I did want to say defense counsel pointed out in his brief, one error in transcription. And I went back and listened and I agree with his, I apologize for that wrongly transcribed part. And I do believe that defense counsel's choice of words is correct. It was a bit hard to hear. So, but on page nine of the brief is where this conversation takes place. And defendant, Mr. Maytubby asked, so what's the difference? I mean, it's going to be the same, right? Because they know, well, you know, maybe it's a one-off thing or you stand up guys. So what's the different? It's going to be the same. He doesn't say, oh, well, we'll just get you into counseling. That is completely taken out of context. What he says is, no, there are people in the world that this is their MO. And then there's people that drink and do drugs and they make mistakes. And then it's not, there's people that's not part of their day. I mean, he goes through this very long conversation with him. And then he's saying, you know, you got to talk to God. If you're, you said you're a pastor. So if you want to talk to God about it, talk to God. But I, and then he says, I think it's happened. I think you're the kind of guy, I think you've probably been struggling with it. The girls struggle too. And I don't think they deserve to struggle. I don't think you deserve to struggle. I think it's everybody. I think it's something that everybody needs to get past, get into some counseling, move on with their life. That's the reference to counseling. I, it is completely unreasonable. You don't think saying move on with your life means move on with your free life? In prison? Yeah. No, I don't, Your Honor, because again of the nature of these charges and, and that. That he couldn't possibly have thought that he would escape prison. Correct. That is an unreasonable inference. And I agree that it doesn't, that, that the question isn't what Officer Whiteman, it was how the defendant interpreted it. But it is unreasonable for any defendant to interpret it that way. And at this level of review. Well, why is it unreasonable after he's just spent the last few minutes just building this guy up and telling him how he's different than all these other folks who assault young children. He's not like them. He's, this is a one-off deal. And, oh, by the way, you're a really good person. And, and I'm going to tell the prosecutor how good you are. And then, oh, by the way, everybody just needs to get counseling and move on with their lives. Everybody, including you. Well, because, Your Honor, it's, that's not necessarily what he spent the last several minutes doing. He didn't say you're, you know, for example, he didn't say you're different from everyone else. Well, that was that long piece you just read. That was the implication of all of that is you're not like some of these other defendants. I've seen all these people and you're different. Correct. Well, you could be like some of these defendants, not some of these, you know, some people do it because they're on drugs. Maybe you were on drugs and that's why you did it. Or just saying all of that precedes that line about moving on with your life, getting some counseling. Everybody can do that this way. You just have to confess that. Well, is that reasonable to assume that? No, because there's no then like the only tie into avoiding prison is move on with your life. And that's not a sufficient enough, the government said that's not a sufficient enough statement to then be interpreted move on to your with your life means no prison. I think if he would have said get counseling and avoid prison, this would be a different case. Yeah. But that's not what this officer said. And as you noted, Judge Warren, he also said everyone needs counseling. The girls need counseling. I think this officer chose his very well. He's trained. He is very trained. Yeah. Right. And in a way, he's he is trained. He chose his words carefully. This is a very well run interrogation conversation. But at what point like how can that then be unconstitutional? He's he's knows where the line is that this court has set. He's not making misrepresentations. He's not making promises of leniency. He's doing everything that the case law requires of him so that this isn't coercive. And never before has a court recognized that like saying, you know, we call it a mitigation report. It's not a mitigation report. Those are defense counsel's words. What he said is I'm going I've done my interview and I'm going to write everything up, which means he's going to write the statement of the girls of the grandma statements, the evidence that he's collected, along with this confession. So the spin that we're seeing on it is not necessarily what the report is or what was promised. What was promised is what was stated. So it just seems that there is no misrepresentation about a fact or law and there is no promise of leniency. And when we're trying to make inferences and trying to decide what's reasonable, the standard of review is to give an interpretation that matches up with the district court's interpretation. And the district court found three times that there was no coercive activity on the part of Officer White during this conversation. And so given the totality of the circumstances, the government would request that the that this court affirm the district court district court's holding. Thank you. Mr. Lee, have some more time. Good.  Briefly, opposing counsel says that the Haynes case doesn't mean we care about an inducement of any sort. But let me read what Haynes says. Quote, the true test of admissibility is that the confession is made freely, voluntarily and without compulsion or inducement of any sort. That's just what it says. Second, this inducement was improper because it was not a limited assurance within the meaning of this court's case law. And it was accompanied by this deceptive statement about counseling. So I'd ask. Are you saying our precedent is out of line with Haynes? No, I don't think so. I do think that this court's carved out a limited assurance, which is just basically making vague statements or statements about what the law in general already requires. Thank you. Thank you, counsel.